IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        *Plaintiff*,<br><br>v.<br><br>MARK CRAIGHEAD,<br><br>        *Defendant*. | Criminal No. 2:17-143 |

**OPINION**

### I.    Introduction

Pending before the Court is a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), filed by counsel on behalf of defendant Mark Craighead ("Craighead") (ECF No. 477), with exhibits in support under seal (ECF No. 486). The government filed a response in opposition to the motion on December 31, 2020 (ECF No. 487) and the motion is now ripe for disposition.

In the motion, Craighead argues that he is entitled to compassionate release due to COVID-19 because of his medical conditions of: (1) hyperension; (2) prediabetes; and (3) obesity.[1]

Craighead represents that he has strong family support if released, maintained clean conduct in prison and furthered his rehabilitation by participating in programs offered by the Bureau of Prisons ("BOP"). Craighead contends that the §3553(a) factors support his compassionate release.

---

[1] The original motion cited asthma, but the medical records contain no reference to asthma (ECF No. 486).

The government opposes Craighead' motion. The government concedes that the motion is ripe because Craighead exhausted his administrative remedies and that he established extraordinary and compelling reasons for release, but contends that he poses a danger to the community, and release is not warranted after considering the § 3553(a) factors and guidelines policies (ECF No. 487).

II.     **Procedural History**

On April 16, 2018, Craighead pleaded guilty to counts 1 and 2 of the Indictment in this case, which charged him with: (1) conspiracy to distribute 5 kilograms or more of cocaine from January to May, 2016; and (2) possession of a firearm by a convicted felon. Craighead was the organizer of the offense. Presentence Investigation Report ("PSI") ¶ 28 (ECF No. 253). A search warrant executed at Craighead's home in May 2016 recovered over $150,000 in cash.

Pursuant to the parties' plea agreement, the government agreed to not file § 851 Informations about prior felony drug convictions as a basis for increased punishment. Craighead was in criminal history category VI because he was classified as an armed career criminal. The advisory guideline range was 188-235 months of imprisonment. On March 14, 2019, Craighead was sentenced to a term of imprisonment of 70 months at each count, to run concurrent, followed by 5 years of supervised release. Craighead did not file a direct appeal.

Craighead is currently incarcerated at a low-security camp at USP-Lewisburg, a penitentiary in Lewisburg, Pennsylvania. He is now 46 years old. His projected release date is June 5, 2024. The Bureau of Prisons ("BOP") website reflected that on January 15, 2021, there were 54 inmates and 24 staff with active cases of COVID-19. https://www.bop.gov/coronavirus/index.jsp, last visited January 15, 2021. There are 659 total

inmates at the facility.  https://www.bop.gov/locations/institutions/lew/, last visited January 15, 2021.

Craighead requested compassionate release due to COVID-19 from the warden on May 8, 2020.  The request was rejected on May 11, 2020.   Craighead waited more than 30 days before seeking relief in court.  The government concedes that Craighead's motion for compassionate release is now ripe to be decided by the court.

### III.   Discussion

#### A.  Applicable Law

Craighead seeks compassionate release from imprisonment. A district court has only limited authority to "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); United States v. Savani, 733 F.3d 56, 60 (3d Cir. 2013). The Third Circuit Court of Appeals has recognized that Congress enacted exceptions to this "general rule of finality" in 18 U.S.C. § 3582(c)(1). United States v. Easter, 975 F.3d 318, 323 (3d Cir. 2020) (explaining that "[s]entence modifications under § 3582(c) constitute 'exception[s] to the general rule of finality' of sentences") (quoting Dillon v. United States, 560 U.S. 817, 824 (2010)).

Section 3582(c)(1)(A) provides:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case--
>
> > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the

> factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A). The foregoing statutory provision sets forth a *three-part analysis* for district courts to utilize to resolve a motion for compassionate release. The Third Circuit Court of Appeals has instructed that pursuant to § 3582(c)(1)(A), "a district court 'may reduce [a federal inmate's] term of imprisonment' and 'impose a term of probation or supervised release … if it finds that … extraordinary and compelling reasons warrant such a reduction.'" United States v. Pawlowski, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). "[B]efore granting compassionate release," however, "a district court must 'consider[] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. (quoting 18 U.S.C. § 3582(c)(1)(A)). The court must also consider whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission, 18 U.S.C. § 3582(c)(1)(A). United States v. Doe, No. 20-2650, 2020 WL 6328203, at *1, n.2 (3d Cir. Oct. 29, 2020).

Based upon the foregoing, to grant Craighead compassionate release under § 3582(c)(1)(A), the court must analyze whether: (1) extraordinary and compelling reasons exist for his release; (2) compassionate release is warranted in consideration of the § 3553(a) factors;[2] and

---

[2]   The factors set forth in 18 U.S.C. § 3553(a) are:

(3) compassionate release is consistent with applicable policy statements issued by the Sentencing Commission.

Craighead bears the burden of proof by a preponderance of the evidence to show that he is entitled to compassionate release. United States v. Smith, No. CR 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020) (citing United States v. Adeyemi, No. CR 06-124, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020)). Courts have held that to satisfy this burden, a movant must produce evidence to the court. See e.g., United States v. Matthews, Crim. Action No. 09-612-1, 2020 WL 5217132, at *6 (E.D. Pa. Sept. 1, 2020); United States v. Brunetti, Crim. Action No. 2020 WL 4516541, at *6 (E.D. Pa. July 31, 2020); United States v. Richardson, Crim. No. 18-507, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020).

### B. Extraordinary and Compelling Reasons

Prior to the enactment of the First Step Act on December 21, 2018, only the Director of the BOP could file a motion for a sentence reduction under §3582(c)(1)(A)(i). Ray v. Finley, No. 3:19-CV-0988, 2019 WL 5569616, at *3 (M.D. Pa. Oct. 29, 2019). The First Step Act amended §

---

- the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);

- the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);

- the sentencing range established by the Sentencing Commission, § 3553(a)(4);

- any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);

- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and

- the need to provide restitution to any victims of the offense, § 3553(a)(7).

3582(c)(1)(A), which now provides that "a motion for reduction in sentence may be filed by either the Director of the BOP or a federal inmate" after the federal inmate exhausts administrative remedies. Id.

"Congress did not define 'extraordinary and compelling reasons' except to provide 'rehabilitation…alone' does not suffice." Adeyemi, 2020 WL 3642478, at *7 (quoting 28 U.S.C. § 994(t)). The Third Circuit Court of Appeals has explained that "compelling and extraordinary" reasons for the reduction of a sentence are "defined by the commentary to policy statement U.S.S.G. § 1B1.13." United States v. Handerhan, No. 19-1904, 789 F. App'x 924, 925 (3d Cir. 2019) (citing United States v. Barberena, 694 F.3d 514, 521 n.10 (3d Cir. 2012)). "That commentary currently lists four categories of such reasons: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) 'other reasons' as determined by the Director of the Bureau of Prisons." Id. (quoting U.S.S.G. § 1B1.13 cmt. n.1.). The court in Adeyemi explained the first three categories as follows:

> The first category includes incarcerated persons suffering from terminal illnesses, such as metastatic solid-tumor cancer, amyotrophic lateral sclerosis, end-stage organ disease, and advanced dementia, or those suffering from medical conditions, impairments, or deteriorations due to age that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."…The second category includes incarcerated persons who are at least sixty-five years old, experience a serious deterioration in physical or mental health because of the aging process; and have served at least ten years or seventy-five percent of their term of imprisonment, whichever is less….The third extraordinary and compelling reason may arise where the primary caregiver of the incarcerated person's minor child or children died or became incapacitated or where the incarcerated person's spouse became incapacitated and he is the only available caregiver for the spouse.

Adeyemi, 2020 WL 3642478, at *7 (citing U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)).

The court of appeals in Handerhan explained that "[t]he Sentencing Commission has not yet amended § 1B1.13 or its commentary to account for the First Step Act…[and] the District Courts are divided on whether and how to apply the catch-all 'other reasons' category and its

6

reference to determinations made by the Director." Handerhan, 789 F. App'x. at 925 n.1 (citing United States v. Fox, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *2 (D. Me. July 11, 2019)). While U.S.S.G. § 1B1.13 was not updated to reflect the First Step Act amendments, the Commission's policy statement "does not constrain a court's independent assessment about whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)." United States v. Somerville, No. 2:12-CR-225-NR, 2020 WL 2781585, at *6-7 (W.D. Pa. May 29, 2020) (holding the court has authority to independently assess whether there are "extraordinary and compelling reasons" to reduce a defendant's sentence).³

"The starting point in discerning congressional intent is the existing statutory text[.]" Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004). "Extraordinary and compelling" is not defined by statute, and, therefore, the court must give the terms their "'ordinary meaning.'" United States v. Diallo, 575 F.3d 252, 256 (3d Cir. 2009) (quoting Moskal v. United States, 498 U.S. 103, 108 (1990)). The court in Somerville explained:

> The word "extraordinary" is commonly understood to mean "going beyond what is usual, regular, or customary," or "exceptional to a very marked extent." *Extraordinary*, Merriam-Webster Dictionary (2020); see also *Extraordinary*, Black's Law Dictionary (11th ed. 2019) ("Beyond what is usual, customary, regular, or common.").
>
> The word "compelling" means "forceful," "demanding attention," or "convincing." *Compelling*, Merriam-Webster Dictionary (2020); see also *Compelling Need*,

---

³ This is the conclusion shared by a "vast majority" of courts that considered "whether courts may independently evaluate extraordinary and compelling reasons to reduce sentences" under the catchall provision of U.S.S.G. § 1B1.13. Adeyemi, 2020 WL 3642478, at *10 (collecting decisions); United States v. Andrews, Crim. Action No. 05-280-02, 2020 WL 4812626, at *3 (E.D. Pa. Aug. 19, 2020) (finding that district courts "overwhelmingly conclude that a court can make an independent determination of what constitutes extraordinary and compelling reasons"). For example, the court in Adeyemi explained that the directive in U.S.S.G. § 1B1.13 that the Director of the BOP determines whether "other reasons" exist for the compassionate release of a defendant is not authoritative because it contradicts with the plain language of 18 U.S.C. § 3582(c)(1)(A), which requires the court to find extraordinary and compelling reasons for a defendant's release. Adeyemi, 2020 WL 3642478, at *14-15 (citing United States v. LaBonte, 520 U.S. 751, 764 (1997); Stinson v. United States, 508 U.S. 36, 37 (1993)).

> Black's Law Dictionary (11th ed. 2019) ("A need so great that irreparable harm or injustice would result if it is not met.").
>
> Thus, at a minimum, § 3582(c)(1)(A)(i) requires a justification for release that is both unusual (i.e., unique to the inmate, and beyond the ordinary hardship of prison) and significant (i.e., serious enough to make release appropriate).

Somerville, 2020 WL 2781585, at *7.

### i. COVID-19

The court in Somerville discussed a two-part analysis to determine whether the COVID-19 pandemic represents an extraordinary and compelling reason for a defendant's release. The court explained:

> While the Third Circuit has not articulated a definitive standard to be applied to § 3582(c) motions in this context, it has observed generally that the mere "existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner[.]" United States v. Roeder, 807 Fed. Appx. 157, 161 n.16 (3d Cir. 2020). From that, the Court infers that a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a ***uniquely high risk*** of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held.

Somerville, 2020 WL 2781585 at *4. (emphasis added). The court adopts and will apply that two-part test to determine whether Craighead set forth extraordinary and compelling reasons for his release based upon his medical conditions and the situation at USP Lewisburg during the COVID-19 pandemic. In sum, Craighead has the burden to show that: (1) he suffers from a sufficiently serious medical condition, or advanced age, that places him at a uniquely high risk of grave illness or death if infected by COVID-19 (extraordinary); and (2) there exists an actual, non-speculative risk of exposure to COVID-19 at USP Lewisburg (compelling).

8

a.  Whether Craighead faces a uniquely high risk from COVID-19

In his motion, Craighead contends that he is at uniquely high risk of grave illness or death from COVID-19 because of his medical conditions of hypertension, prediabetes and obesity. Craighead provided medical records with his motion, which the court reviewed.

Because the government conceded that Craighead articulated extraordinary and compelling reasons for compassionate release (ECF No. 487 at 3), the court's discussion will be abbreviated.  The court will assume for the sake of this analysis that the government's concession is correct.  Craighead's age (46), however, is well below the threshold set in the guidelines policy, U.S.S.G. § 1B1.13, and there is no evidence that his age poses a uniquely high risk of serious consequences from COVID-19.  The degree of obesity determines the severity of the risk.  A person with a Body Mass Index ("BMI") of 48 (i.e., morbidly obese), poses greater concern than a person with a BMI of 31.4 (i.e., slightly obese), such as Craighead (ECF No. 486 at 1).  United States v. Grasha, No. 18-325, 2020 WL 5747829 at *4 (W.D. Pa. Sept. 24, 2020). The records provided by Craighead do not establish that he has hypertension.  To the contrary, on September 28, 2020, he had an elevated blood pressure, without diagnosis of hypertension (ECF No. 486-1 at 4).  Type 2 diabetes mellitus is a Covid-19 risk factor, but "prediabetes" (high blood sugar, but not high enough to be Type 2 diabetes) is not an identified risk factor. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, last visited January 15, 2021.

In sum, the court will assume for the sake of this analysis that Craighead met his burden to produce evidence to establish that he faces a uniquely high risk of serious consequences from COVID-19.

b. Risk of exposure at USP Lewisburg

The court takes judicial notice that there are current cases of COVID-19 at USP Lewisburg, with 54 inmates and 24 staff testing positive for COVID-19. Although the court recognizes the BOP's significant efforts to minimize and control the spread of the pandemic, it is well-established that it is difficult to engage in social distancing and other mitigation efforts in a congregate setting such as a prison. The court will assume, for purposes of this motion, that there is an actual, non-speculative risk that Craighead will be exposed to COVID-19 at USP Lewisburg.

c. Conclusion about COVID-19

The court will assume, for purposes of this motion, that there is an actual risk that Craighead will contract COVID-19 at USP Lewisburg and assumes, based on the government's concession, that Craighead established that he has serious medical conditions that place him at "*uniquely* high risk" of grave illness if he contracts COVID-19.[4] Under those assumptions, Craighead has shown an extraordinary and compelling reason for his compassionate release.

---

[4] The court notes that the COVID-19 conditions at USP Lewisburg, alone, do not constitute extraordinary and compelling reasons for Craighead's release. The Third Circuit Court of Appeals has recognized:

> [T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. See generally Federal Bureau of Prisons, COVID-19 Action Plan (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_COVID19.jsp.

United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). Thus, as the court explained in Somerville, a defendant must show there is an actual risk he or she will contract COVID-19 while incarcerated and that he or she is particularly at-risk of suffering grave illness if he or she contracts COVID-19.

### IV.     Section 3553(a) factors

The compassionate release statute states that a court may reduce the term of imprisonment "after" it considers the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. 18 U.S.C. § 3582(c)(1)(A). Because the court assumed, based on the government's concession, that Craighead established an extraordinary or compelling reason for release, it must address the § 3553 factors and guidelines policies in its analysis. In doing so, the court will consider Craighead's continuing post-sentence rehabilitation, family support and the availability of a full-time job. *See United States v. Tidwell*, No. CR 94-353, 2020 WL 4504448, at *7 (E.D. Pa. Aug. 5, 2020) (court's review of the § 3553(a) factors must consider the "most up-to-date picture" of the defendant's "history and characteristics," including evidence of rehabilitation).

The government emphasizes that Craighead poses a danger to the community if released. The "danger to the community" policy consideration in U.S.S.G. § 1B1.13 is somewhat similar to the § 3553(a)(2)(C) sentencing factor that a sentence "protect the public from further crimes of the defendant." The government argues that despite his family support, Craighead remains a danger to the community based upon his lifelong involvement in crime and his lengthy drug distribution activities. He has multiple prior felony drug convictions. The government also points out that the requested relief would essentially reduce his prison term by 50%.

The court weighed the § 3553(a) factors fairly recently, on March 14, 2019, when imposing the original sentence. The main reason for the sentence was the plea agreement entered into by the government and Craighead. The court recognized that the sentence represented a substantial downward variance. The court noted Craighead committed serious offenses involving a firearm and cocaine which posed serious dangers to the community. The court considered his serious criminal history and that his previous long term of imprisonment did not prevent him from engaging in the instant offenses. On the other hand, the court recognized the love and support of

11

his family, who reported that he is a great father, and his sincere desire to live a law-abiding life and proven ability to work hard and obtain gainful employment. After balancing all these considerations, the court concluded that a term of imprisonment of 70 months, which was well below the advisory guideline term of imprisonment, was sufficient, but no greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes by Craighead.

Upon reexamining the § 3553(a) factors, the court adheres to its original determination. Craighead already received the benefit of a significant downward variance from the advisory guideline range and the government's agreement to not file any § 851 Informations. A reduction of his sentence would not be consistent with the statutory sentencing purposes or the terms of the parties' plea agreement and would be well below the statutory mandatory minimum established by Congress. The court agrees with the government that based upon his criminal history, Craighead would pose a significant danger to the community if released and that a term of imprisonment of 70 months is warranted.

**V.      Conclusion**

Once a court imposes a sentence and it becomes final, it may not be modified unless an exception to the rule of finality applies in the case. Here, Craighead did not satisfy his burden under § 3582(c)(1)(A) to show that extraordinary and compelling reasons warrant his premature release from imprisonment after consideration of the policies and § 3553(a) factors. His motion for compassionate release (ECF No. 477) will, therefore, be denied without prejudice to reassert if his circumstances materially change.

An appropriate order will be entered.

Dated: January 21, 2021         BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge